IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In Re<br>WAYNE E. TRIPP and SARA L. TRIPP,<br><br>Debtor. | Chapter 7<br><br>Case No. 05-24454-PHX-SSC<br><br>Adv. No. 05-1076 |
|---|---|
| ROBERT C. STEIN,<br><br>Plaintiff,<br><br>vs.<br><br>WAYNE E. TRIPP AND SARA L. TRIPP,<br><br>Defendants. | MEMORANDUM DECISION<br><br>(Opinion to Post) |

## I. PRELIMINARY STATEMENT

The Plaintiff, Robert Stein ("Stein"), acting pro se, commenced an adversary proceeding on December 15, 2005, to determine whether the Debtors should receive a discharge and whether a debt due and owing to him was nondischargeable. The Court conducted various pre-trial proceedings in this Adversary Proceeding, including whether Stein had set forth sufficient facts to have the Debtors discharge denied. The Court determined to provide notice to the Chapter 7 Trustee of Stein's allegations and allow the Trustee to intervene on behalf of the estate if he believed it was warranted. The Chapter 7 Trustee filed a response with this Court, noting that he did not wish to intervene and did not oppose the dismissal, with prejudice, of any

1

count under 11 U.S.C. §727 asserted by Stein.[1] Accordingly, the Court proceeded with a trial, lasting several days, just on the claims asserted by Stein that the debt due and owing to him by the Debtors should be deemed nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A). Thereafter this Court took the matter under advisement.

This Decision shall constitute the Court's findings of fact and conclusions of law pursuant to Fed.R.Bank.P. 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C.§§ 1334 and 157. (West 2006).

## II. FACTUAL DISCUSSION

Between March and July 2005, Tricard, LLC ("Tricard") advertised and sold gift cards to individuals and organizations. The Debtor, Wayne Tripp ("Tripp"), was an owner and manager of Tricard.[2] Tricard sold gift cards from various major retailers at a discount. Individuals or organizations could purchase gift cards at prices approximately 20 - 30% below the face value of the card. Mr. Tripp would take orders from individuals and then forward those orders to a third party who would provide the cards.

Tripp testified that upon receiving an order and payment from a customer, he would deposit the payment into Tricard's business account, and electronically place the order with the third party at www.plasticdollars.com. He would then pay an "Allison Boucher" for the order via a wire transfer.[3] Tricard would receive the purchased gift cards from the third-party supplier and deliver them to the customer. The purpose of this venture was to make a profit.[4] For example, Tricard would sell gift cards with a face value of $1,500 to a customer for $1,360;

---

**1.** *See* Docket Entry No. 34.

**2.** The co-debtor, Sara Tripp, was not a member of the LLC.

**3.** The funds were transferred to an account with Keypoint Federal Credit Union, located in Louisiana, and later transferred to an account with First Convenience Bank in Texas.

**4.** *See* Exhibit 3.

2

Tricard, would then obtain the cards from the third- party supplier at the lower amount of $1,060. However, its not clear from the evidence what the exact profit margin was for each transaction.

Tripp and Stein met in May 2005. Stein arranged to purchase 250 Home Depot gift cards, with a face value of $15,000, for the sum of $12,000.[5] Tripp deposited the funds from Stein directly into Tricards' business account on May 20, 2005.[6] Although Tripp testified that he wire transferred Stein's funds to Ms. Boucher, acting as an agent of the third-party supplier, on May 31, 2005, he was unable to trace those funds.[7] However, even if this Court were to assume that those were Stein's funds, Tripp could only identify the sum of $4,000 being transferred to the third-party supplier on that date.[8] In explaining the inability to trace the transfer of the full $12,000 to the third-party supplier, Tripp testified that because of the nature of the Tricard business, he would routinely have a "credit balance" with Ms. Boucher, allowing him to pay only a portion of a given order. In reviewing Tripp's bank statements, however, it is not clear if the $4,000 amount is Stein's money. Tripp provided insufficient evidence for this Court to trace the funds. Tripp deposited and withdrew funds from the Tricard checking account on a regular basis, making it difficult to "identify" with certainty the ownership of the funds that were wire transferred on May 31, 2005. For example, the beginning balance of the Tricard checking account in May 2005 was $58,390.70, with deposits in the amount of $277,582.00, and debits in the amount of $278,607.64, leaving an ending balance of $57,365.06.[9]

On June 14, 2005, Stein placed a second order with Tricard, through Tripp, in the

---

**5.** *See* Exhibit 2.

**6.** *See* Exhibit A; Desert Schools Federal Credit Union Bank Statement for May 1, 2005- May 31, 2005, p. 3.

**7.** Id.

**8.** Id.

**9.** Id.

3

amount of $6,125.00.[10] However, Tripp notified Stein that he could not accept the order. Tripp had yet to fill Stein's first order. By Mid-June 2005, Tripp had begun to experience problems with his third- party supplier, and was unable to fill customer orders. Tripp was then forced to buy the gift cards for Tricard directly from retailers at full cost, thereby suffering a loss from operations. It appears that Tripp either tried to fill the customer orders, at full cost, or he provided a refund to the Tricard customers. Eventually Tricard had no cash on hand to cover the customer orders, so Tripp testified that he used his own funds to purchase gift cards, at full cost, or to refund money to the Tricard customers until his funds were depleted as well.

A review of Tricard's records reflects that it was a high-volume venture which quickly collapsed.[11] The bank statements reflect that the beginning balance of the checking account, in June 2005, was $57,365.06, with deposits in the amount of $10,625.00, and debits in the amount of $61,720.09, leaving an ending balance of $6,269.97.[12]

In August 2005, Tripp refunded the amount of $6,125.00 to Stein, leaving a balance due and owing to Stein of $12,000. Subsequently, on October 14, 2005, the Debtors filed their petition for relief under Chapter 7. Stein commenced the above-captioned adversary on December 15, 2005, alleging that the Debtor had defrauded Stein in the purchase of the gift cards.

Of significant concern to the Court is the lack of documentation provided by Tripp for the Tricard business. Tripp testified that he conducted the Tricard transactions with the third-party supplier solely over the internet. He was wire transferring as much as $278,607.64 in a one-month period to a Ms. Boucher about whom he knew nothing. He had no documentation

---

**10.** *See* Exhibit A; Desert Schools Federal Credit Union Bank Statement for June 1, 2005-June 30, 2005, p. 3.

**11.** *See* Exhibit D, the Tricard 2005 Federal Tax Returns, reflecting a net loss of $36,977 from operations.

**12.** *See* Exhibit A; Desert Schools Federal Credit Union Bank Statement for June 1 - June 30, 2005, p. 3.

4

to support these transactions other than deposits and withdrawals from the Tricard checking account. Tripp had inadequate books and records for such a high-volume business, including no journals (electronic or otherwise) reflecting the Tricard accounts, accounts receivable, or credits with the third-party supplier, or any normal accounting records for Tricard, such as a balance sheet, a profit and loss statement, or a cash flow statement. However, the Court must focus on Stein's claim and whether he has set forth sufficient facts to be accorded a judgment in his favor.

### III. LEGAL ANALYSIS

Pursuant to 11 U.S.C. § 523(a)(2)(A), a monetary debt is nondischargeable "to the extent obtained by false pretenses, a false representation, or actual fraud." In the Ninth Circuit, to prove nondischargeablity under §523(a)(2)(A), the Plaintiff needs to show that "(1) that the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor justifiably relied on such representations; and (5) that the creditor sustained alleged loss and damage as the proximate result of such representations." In re Diamond, 285 F.3d 822 (9th Cir. 2002); In re Slyman, 234 F.3d 1081 (9th Cir. 2000); In re Ettell, 188 F.3d 1141, 1144 (9th Cir. 1999); In re Hashemi, 104 F.3d 1122, 1125 (9th Cir. 1996); In re Eashai, 87 F.3d 1082 (9th Cir. 1996). The Plaintiff must establish the nondischargeability of a debt by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 284, 111 S.Ct. 654, 657-58, 112 L.Ed.2d 755 (1991).

The paintiff bears the burden of proof, by a preponderance of the evidence, on all elements of a Section 523(a)(2)(a) request that certain debt be deemed nondischargeable. Grogan v. Garner, 498 U.S. 279, 284, 111 S.Ct. 654, 657-58, 112 L.Ed.2d 755 (1991).

Here, Tripp represented that he would obtain 250 Home Depot gift cards for Stein for the purchase price of $12,000.00. There is no evidence to show that at inception of the transaction, Tripp knew he would be unable to procure the cards from the third- party supplier. The Court should consider the debtor's conduct at the time of the representations and may

5

consider subsequent conduct to the extent that it provides an insight into the debtor's state of mind at the time of the representations. In re Zack, 99 B.R. 717 (Bankr. E.D. Va. 1989); In re Basham, 106 B.R. 453, 457 (Bankr.E.D.Va.1989). Again, based on Tripp's testimony, and as reflected by the Tricard checking account records admitted into evidence, the Court finds that Tripp, on behalf of Tricard, was successfully procuring the gift cards for his customers, albeit only for a short period of time. When the third-party supplier refused to provide any more gift cards to Tripp, the Tricard business quickly collapsed. However, based upon the evidence presented, the Court concludes that Tripp did not encounter any problems with the third-party supplier until after Stein had placed his first order. When Stein attempted to place a second order with Tripp and Tricard, Tripp refunded those funds to Stein. Therefore, the Court finds and concludes that Tripp did not make any false representations to Stein.

For a debt to be excepted from discharge, the debtor must actually intend to defraud the creditor In re Tsurukawa, 258 B.R. 192 (9th Cir. BAP 2001). However, direct evidence of an intent to deceive is rarely shown. Hence, intent may be "inferred and established from the surrounding circumstances." In re Hultquist, 101 B.R. 180 (9th Cir. BAP 1989); In re Anastas, 94 F.3d 1280 (9th Cir. 1996); In re Dakota, 284 B.R. 711 (Bankr.N.D.Cal. 2002). The court must consider whether the totality of the circumstances paints a picture of deceptive conduct by the debtor that indicates an intent to deceive the creditor. In re Basham, 106 B.R. 453, 457 (Bankr.E.D.Va.1989). Because no single objective factor is dispositive, the assessment of intent is, thus, left to the fact-finder. In re Jacks, 266 B.R. 728 (9th Cir. BAP 2001). The intent to defraud a creditor is a finding of fact. In re Rubin, 875 F.2d 755, 759 (9th Cir. 1989). Given the quick collapse of the Tricard business, and Tripp's efforts to refund money to the Tricard customers, including from his personal funds, if necessary, the Court is unable to find that Tripp intended to defraud Stein. In this case, Stein has not carried his burden of proof on this element of a nondischargeable debt as well.

There is no doubt that the facts of this case are unfortunate. The evidence reflects

that during the course of a few months, Tricard went from a high-volume business to a business with no assets.[13] The end result is that Tripp, along with the Tricard customers, such as Stein, suffered a financial loss. Nonetheless, Stein has not shown that his obligation should be deemed a nondischargeable debt.

### IV. CONCLUSION

Based upon the foregoing, the Court concludes that Stein, as the Plaintiff, has failed to establish all of the elements of §523(a)(2)(A). Specifically, the Court finds that Tripp did not make a false representation, and he did not have the requisite intent to defraud. The Court concludes that the entire debt owed to the Plaintiff is discharged.

The Court will execute a separate order incorporating this Memorandum Decision.

DATED this 13th day of December, 2006.

*Sarah Sharer Curley*

Honorable Sarah Sharer Curley
U. S. Bankruptcy Judge

BNC to Notice

---

**13.** *See* Exhibit D. 2005 Federal Tax records indicate a net loss of $36,977 from the business.

7